Marshall, C. J.
 

 Section 6602-35, General Code, provides that a court of common pleas of any county
 
 *452
 
 has authority to establish sanitary districts within such county, and that districts partly within and partly without such county may be established by a court comprised of one common pleas judge from each'county having area within the district. Among the purposes for which such a district may be established is that of providing a water supply for domestic, municipal, and public use within the district, and as an incident to such purpose authority is conferred to construct necessary public works.
 

 Section 6602-36, in its pertinent parts, provides that, before any court shall establish a district for the purpose of providing a water supply for domestic, municipal, and public use, the petition for the establishment of the district shall be filed by the governing body of each municipality, or part thereof, included in the proposed district. That section further provides what shall be set forth in the petition, viz, the proposed name of the district, the necessity for the improvement, a general description of the purpose of the contemplated improvement and of the territory to be included in the proposed district, and a prayer for the organization of the district by the name proposed. Subsequent sections provide for a bond to be filed securing the costs of the proceedings, notice of hearing on petitions, and the procedure relating
 
 thereto;
 
 that the district so created shall be a body corporate, with perpetual existence, and power to sue and be sued, incur debts, exercise the right of eminent domain and of taxation and assessment, to issue bonds and perform all acts authorized or necessary and proper to carry out the purposes for which the district is created.
 

 
 *453
 
 Section 6602-41 provides for the appointment of directors; each county to he entitled to one director, who shall he a resident freeholder of such county. Sections 6602-58 and 6602-59 provide for the appointment of appraisers to appraise the lands or other property within and without the district to be acquired for rights of way, reservoirs, and other works of the district, and to appraise all benefits and damages accruing to all lands within or without the district by reason of the execution of the official plan.
 

 Sections 6602-62 to 6602-64, inclusive, provide for. a notice and hearing and the filing of exceptions by property owners; and Sections 6602-65 and 6602-66 provide for a hearing and determination by the court on all exceptions, and for approval and confirmation of the appraisers’ report. Sections 6602-74 to 6602-90 provide for the financial administration of the district, including the issue and sale of bonds, the levies of assessments upon the property of the district in payment of preliminary expenses, and the payment of principal and interest of bonds, and provide for a fund for the maintenance of the improvement.
 

 The district is composed of the territory included within the municipalities of Niles, in Trumbull county, and Youngstown, in Mahoning county, and does not include any territory outside of those municipalities.
 

 The first objection is that the act violates the home rule aineridments to the Ohio Constitution, as set forth in Sections 3, 4 and 5 of Article XVIII. To this objection it seems a sufficient answer to say that the home rule provisions of the state Constitution
 
 *454
 
 are permissive, and not mandatory upon the municipalities of this state, and that the authority conferred by those provisions may or may not be exercised. Those provisions are not exclusive, but, on the contrary, are additional to the other provisions found in the statutes of this state. When municipalities see fit to invoke the home rule provisions for their own use and benefit, it is beyond the power of the Legislature to circumvent or in any way interfere with those efforts; but, until action taken by municipalities, all of the statutes relating to the government of municipal corporations continue in full force and effect. This legislation does not confer upon municipalities any power which they did not have before, or authorize or permit them to do anything which they could not have done before. It only provides additional machinery for doing in a new way that which they could have done in a different way before. This legislation does not infringe upon the freedom of municipalities from legislative control, and any municipality may employ its own method of providing a supply of water for its own municipal and other public purposes, in utter disregard of the provisions of this legislation.
 

 No such question is presented by this record. The Mahoning Yalley Sanitary District includes no territory except municipal territory. The two cities of Niles and Youngstown have voluntarily, and in the regular way, through action of their respective municipal councils and by concurrence of action, invoked the provisions of this act in the method pointed out by the act itself, and through the instrumentalities provided by that act, to bring about an improved water supply for the purposes of the re
 
 *455
 
 spective municipalities. It is difficult to see upon what theory there has been an infringement or encroachment upon the constitutional rights of the municipalities, or that the statute has by involuntary or compulsory means taken from the cities the power to acquire, construct, or lease and operate within or without their corporate limits any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, or to contract with others for such products or service. This legislation seems to be in perfect harmony with Section 4 of Article XVIII.
 

 Section 3973-1, Q-eneral Code, provides that “two or more municipalities may unite in the construction of a water works plant for the purpose of supplying water to such municipalities and the inhabitants thereof for domestic, manufacturing and other purposes.” That section, within the space of a few lines, confers powers which are quite as broad as those which are conferred by the Sanitary District Act; the only difficulty being that the earlier statute does not provide any of the machinery. Counsel have not questioned the legality of Section 3973-1, but, on the contrary, have even offered that section as a valid substitute to enable Youngstown and Niles to combine their capital and energies in availing themselves of a common supply of water for municipal purposes, and it is difficult to see how, if one statute is valid and constitutional, the other will not also be equally valid and constitutional. There is no distinction in the power conferred; the only difference is in the means employed.
 

 We find nothing in the Sanitary District Act attempting to limit or control municipalities in the
 
 *456
 
 acquisition, ownership, or operation of public utilities, but, on the contrary, Section 6602-49 specifically forbids any such attempt. That section provides that the powers of a sanitary district board shall not include construction and maintenance of water mains and distributing systems, or other related improvements, for local service within the political subdivision forming the district. By the same section it is made clear that the board shall be limited to the construction and maintenance of such works as are necessary in carrying out improvement in sanitation and water supply. If the cities of Youngstown and Niles had an adequate supply of water fit for domestic and other municipal uses, the proceedings in which the sanitary district was created could have been successfully resisted. So far from offering any resistance at that time, the cities were the petitioners, after being duly authorized to file the petitions by their respective municipal councils. We do not understand that it is now claimed that there was any irregularity in the proceedings resulting in the organization of the district and defining the purposes and powers of the Sanitary District corporation. It must be assumed for the purposes of this proceeding that all necessary facts were found and correctly found. The petition in the instant case does not question those findings, but relies solely upon the proposition that the Sanitary District Act was unconstitutional and void, and therefore not a valid basis for those proceedings. If the law is found to be constitutional, it is the end of this controversy.
 

 It has been argued at length that municipalities proceeding under the Sanitary District Act are pro
 
 *457
 
 ceeding in a private or trading capacity, rather than in a public or governmental capacity. We are unable to see that this is material to the inquiry, or that it is important to determine whether it is the one or the other. Whether it is the one or the other, the Legislature may confer the authority pursuant to the general police power of the state. In addition to the general police power, special power has been conferred by Section 36 of Article II of the Constitution. In
 
 Miami County
 
 v.
 
 Dayton,
 
 92 Ohio St., 215, 110 N. E., 726, that provision of the Constitution was held to authorize the Conservancy District Act, and
 
 McNab
 
 v.
 
 Board of Park Commrs., of Metropolitan Park Dist. in Cleveland,
 
 108 Ohio St., 497, 141 N. E., 332, held that that provision of the Constitution was also authority for the Park Board Act. The Sanitary District Act is quite similar in its purposes and in its provisions to the Park District Act, and much more similar to the Conservancy District Act. We find no conflict in the Sanitary District Act with Sections 3, 4, and 5 of Article XVIII of the Ohio Constitution.
 

 The second, third, fourth, and fifth propositions discussed in brief of counsel are identical with the questions presented in
 
 State, ex rel. Bryant,
 
 v.
 
 Akron Metropolitan Park Dist.,
 
 and
 
 State, ex rel. Wadsworth,
 
 v.
 
 Zangerle, Auditor, post,
 
 464, 166 N. E., 407, this day decided by this court. Indeed, counsel for plaintiff in error has referred to the arguments made by plaintiff in error in those cases and has adopted the same as his own. All that appears in the opinions in those cases is therefore applicable in the decision of the instant ease. In addition to what is stated in that opinion,
 
 State Board of
 
 
 *458
 

 Health
 
 v.
 
 Greenville,
 
 86 Ohio St., 1, 98 N. E., 1019, Ann. Cas., 1913D, 52, is a cogent authority. In that case Section 1249
 
 et seq.,
 
 General Code, were held to be a valid and constitutional exercise of the police power of the state. That act delegates power to the state board of health to protect streams against pollution. The Sanitary District Act complements and supplements Section 1249
 
 et seq.
 
 by authorizing judicial proceedings to create a district and a governing board to utilize the water of a stream thus protected.
 

 A minority of the members of this court finds no constitutional inhibition upon the Sanitary District Act. The act was held to be valid and constitutional by the Court of Appeals, and a minority of this court is therefore under the necessity of affirming that judgment, since the Constitution requires the concurrence of all but one of the judges of this court to hold it to be unconstitutional.
 

 Judgment affirmed.
 

 Kinkade, J., concurs.
 

 Day, J., not participating.